NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

BARBARA SOWARDS, *Petitioner/Appellant*,

*v.*

TOMMY SOWARDS, *Respondent/Appellee*.

No. 1 CA-CV 25-0781 FC

FILED 08-05-2026

Appeal from the Superior Court in Maricopa County
No. FN2019-093369
The Honorable Keith A. Miller, Judge

**REVERSED IN PART; AFFIRMED IN PART; REMANDED**

COUNSEL

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya joined, and in which Judge James B. Morse Jr. joined in part. Judge James B. Morse also delivered a separate special concurrence.

_____

**J A C O B S**, Judge:

¶1          Barbara Sowards ("Wife") appeals the superior court's order dividing community property, denying her request for spousal maintenance, and awarding her attorneys' fees. For the following reasons, we reverse the court's community property ruling and remand for a new division of property and calculation of prejudgment interest, affirm its denial of spousal maintenance, and remand for reconsideration of its attorneys' fees ruling in light of this decision.

### FACTS AND PROCEDURAL HISTORY

¶2          Wife and Tommy Sowards ("Husband") divorced in 2020. During their marriage, they sued a pacemaker manufacturer. The jury in that case awarded compensatory damages of $2,323,673 to Husband and $60,000 to Wife. It also awarded $65 million in punitive damages against the pacemaker manufacturer, which the superior court reduced to $25 million in the judgment.

¶3          Thereafter, Husband and Wife entered a written settlement agreement (the "Agreement") with the pacemaker manufacturer. They agreed to vacate the trial court's judgment and dismiss all claims with prejudice in exchange for a $12 million settlement. The Agreement provided that the pacemaker manufacturer would deposit $6.6 million into the trust account maintained by Husband's and Wife's attorney and stated that $2,383,673 of that amount was attributable to Husband's and Wife's alleged personal physical damages. The remaining $5.4 million of the $12 million settlement amount would fund a series of payments to Husband per a detailed schedule (the "Annuity Payments").

¶4          When Husband and Wife divorced, Wife sought one-half of the Annuity Payments or, in the alternative, spousal maintenance. The superior court ruled that it would enforce the terms of the Agreement, which made the Annuity Payments Husband's sole and separate property

during his lifetime. It also denied Wife's request for spousal maintenance, finding she had agreed in her pleadings that she would not receive spousal maintenance.

**¶5** Wife appealed. This Court affirmed the separate property ruling but reversed the spousal maintenance decision and directed the superior court to determine whether Wife was entitled to spousal maintenance based on the evidence and reconsider its denial of Wife's request for attorneys' fees. *Sowards v. Sowards*, 1 CA-CV 21-0098 FC, 2022 WL 678530, at *2-3 ¶¶ 10, 13-14 (Ariz. App. Mar. 8, 2022) (mem. decision).

**¶6** On appeal from that ruling, the Arizona Supreme Court held the Agreement was not a binding property settlement or post-nuptial agreement. *Sowards v. Sowards*, 255 Ariz. 527, 529 ¶ 1 (2023). It remanded for the superior court to determine if any portion of the Annuity Payments was Husband's sole and separate property and, if not, to divide them as community property. *Id.* at 532 ¶ 22.

**¶7** After the Supreme Court's decision, Wife concluded the Agreement did not accurately reflect the settlement she and Husband had reached with the pacemaker manufacturer. She based this conclusion on a disbursement statement from the attorney who represented Husband and Wife in the pacemaker litigation, which listed $12 million in settlement proceeds, attorneys' fees and costs of $5,141,000, and "settlement proceeds to clients" of $6,859,348.31. Confusingly, the document appeared to show that $5,400,000 was deducted from the $6,859,348.31 for the annuity payments, with the remaining $1,459,348.31 paid to Husband ($1,399,348.31) and Wife ($60,000).

**¶8** In the superior court, Wife moved to join the companies and individual involved in drafting the Agreement and administering the Annuity Payments, and filed a complaint to reform the Agreement. She alleged that the Agreement needed to be reformed to correctly state that $6.8 million was to be paid to Husband and Wife, with $1,459,348.31 payable to them for their compensatory damages, and the remaining $5.4 million used to purchase the annuity for periodic payments owned by their community estate.

**¶9** Wife and Husband agreed that, as a temporary order pending trial, Husband would pay to Wife one-half of the Annuity Payments he received each month beginning November 2023. Then, before trial, Wife settled her claims against the Agreement's drafter, and agreed with Husband and the companies administering the annuity that one-half of the

Annuity Payments would be sent directly to her going forward. The trial, therefore, was limited to what portion of the Annuity Payments Wife was entitled to receive from January 2019 to November 2023, Wife's spousal maintenance claim, and Wife's claim for attorneys' fees from the dissolution trial and post-remand proceedings.

¶10        The superior court ruled that the Agreement preserved $2,323,673 as Husband's sole and separate property, he received $1,399,348.31 of that money at settlement, and the remaining amount ($924,324.69) was applied toward the $5.4 million annuity purchase price. As a result, it found that 17.12% of the Annuity Payments belonged to Husband as his sole and separate property, and 82.88% of the payments belonged to the community. It calculated Wife's portion of the Annuity Payments between January 2019 and November 2023 as $528,069.92. The court initially characterized this amount as spousal maintenance, but after Wife moved to alter or amend the judgment, changed it to a marital property division.

¶11        Because Husband conceded at trial he owed Wife at least $371,897.50, the superior court awarded Wife interest on that amount at 9.5% for the 559 days between November 1, 2023 and the date of its ruling. The court also awarded Wife $15,000 in attorneys' fees for the dissolution proceeding and, later, $30,000 in attorneys' fees for the post-remand proceedings.

¶12        Wife timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(2).

## ISSUES

¶13        Wife asserts the court erred by: (1) not characterizing the entirety of the Annuity Payments as community property; (2) incorrectly calculating prejudgment interest; (3) determining Wife was not entitled to an award of spousal maintenance; and (4) awarding only a portion of Wife's requested attorneys' fees for the post-remand proceedings.

## DISCUSSION

### I.    Husband's Failure to File an Answering Brief Is an Implied Confession of Reversible Error.

¶14        Husband filed no answering brief. "Where debatable issues are raised, the failure of an appellee to file an answering brief constitutes a confession of reversible error." *Bugh v. Bugh*, 125 Ariz. 190, 191 (App. 1980).

4

However, the confession of reversible error doctrine is discretionary. *See Gibbons v. Indus. Comm'n*, 197 Ariz. 108, 111 ¶ 8 (App. 1999); *Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994). As we explain below, the issues Wife raises are not merely debatable, they are meritorious. Rather than simply relying upon waiver, and to assist the superior court upon remand, we exercise our discretion to explain our analysis of the issues we resolve in favor of Wife.

## II. The Superior Court Erred by Determining That Husband Should Retain 17.12% of the Annuity Payments as His Separate Property.

**¶15** After the Arizona Supreme Court's remand, Husband had the burden to prove that any or all of the Annuity Payments were his sole and separate property. *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979) ("Property acquired by either spouse during marriage is presumed to be community property, and the spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence."); *Jurek v. Jurek*, 124 Ariz. 596, 598 (1980) (amounts awarded for personal physical injuries are separate, not community property). Wife argues the superior court erred by apportioning a percentage of the Annuity Payments to Husband as his sole and separate property and by denying her motion to alter or amend the judgment. We review *de novo* the superior court's characterization of property and interpretation of contracts. *In re Marriage of Pownall*, 197 Ariz. 577, 581 ¶ 15 (App. 2000); *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

**¶16** The superior court rejected Wife's argument that she and Husband accepted a reduced amount of personal physical damages in the pacemaker settlement and found that the Agreement preserved $2,383,673 as damages based on personal physical injury (divided $2,323,673 to Husband and $60,000 to Wife). It reasoned that because Husband received a check for $1,399,348.31 at settlement, the amount of his remaining personal injury damages ($2,323,673 - $1,399,348.31 = $924,324.69) was to be paid via the Annuity Payments. Thus, it apportioned the Annuity Payments as 82.88% community property and 17.12% Husband's sole and separate property.

**¶17** The superior court's apportionment is not supported by the record. Under the Agreement, the pacemaker manufacturer funded the $12 million settlement through two components: a $6.6 million cash payment and $5.4 million allocated to fund the Annuity Payments. The evidence does not support any suggestion that Wife and Husband purchased the annuity themselves with settlement proceeds. The pacemaker

manufacturer was obligated to make the Annuity Payments separate from the $6.6 million cash payment — and paid a third party to assume that obligation when the Agreement was signed. The disbursement statement from Husband and Wife's attorney in the pacemaker litigation states that the $5.4 million was paid directly to the assignee of that obligation.

¶18 Crucially, the Agreement provides that $2,383,673 of the $6.6 million cash payment is attributable to personal physical injuries. When Husband and Wife received the $6.6 million cash payment, it contained all $2,383,673 in personal physical damages they were owed under the Agreement. The reason why Husband did not receive a check for the full amount of personal physical damages allocated to him ($2,323,673) is because Husband and Wife used the $6.6 million cash payment to pay their attorneys' fees and other costs. But Husband still received the full amount of physical damages allocated to him — he simply allowed his lawyers to keep the remaining $924,324.69 paid to him for his personal physical damages. After those expenses, only $1,458,248.31 of the $6.6 million cash payment remained and was divided between Husband ($1,399,348.31) and Wife ($60,000).

¶19 Because no amount of the Annuity Payments was allocated to personal physical injuries, Husband did not satisfy his burden on remand to establish that any portion of those payments is his sole and separate property. *Cockrill*, 124 Ariz. at 52. Accordingly, the superior court erred in determining that Husband should retain 17.12% of the Annuity Payments as his sole and separate property. We thus remand for the superior court to divide the Annuity Payments as community property.

## III. The Superior Court Erred in its Award of Prejudgment Interest to Wife.

¶20 The superior court awarded Wife prejudgment interest on a portion of the Annuity Payments it awarded her ($371,897.50 of the $528,069.92 award) at 9.5% for the 559 days between November 1, 2023 and the date of its ruling. Wife argues she is entitled to interest — at the statutory rate — on her share of each annuity payment that Husband received but did not distribute to her, calculated from the date each payment was made. We review the superior court's ruling on entitlement to prejudgment interest *de novo*. *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 544 ¶ 39 (App. 2004).

¶21 Prejudgment interest is awarded as a matter of right when a claim is liquidated — that is, there is a precise basis for calculating the

amount owed. *Id.* The mere fact that liability is uncertain doesn't make a claim unliquidated. *Id.* at ¶ 40. "All that is necessary is that the evidence furnish data which, if believed, makes it possible to compute the amount with exactness." *Id.*

**¶22**　　　　Here, the exact amount of the Annuity Payments Wife was owed from January 2019 to November 2023 can be calculated. Her claim is therefore liquidated and she is entitled to prejudgment interest on each annuity payment that Husband received but did not share with her from January 2019 to November 2023.

**¶23**　　　　The superior court erred by limiting Wife's prejudgment interest to only a part of the Annuity Payments owed to her and by calculating that interest from November 2023 forward. On remand, we direct the court to award Wife prejudgment interest on the entire amount of Annuity Payments it determines Wife was entitled to and did not receive from January 2019 to November 2023. The prejudgment interest must be calculated at the statutory rate applicable on the date of each annuity payment withheld from Wife during that period.

### III.　The Superior Court Did Not Err By Denying Wife's Request for Spousal Maintenance.

**¶24**　　　　Wife argues the superior court abused its discretion by denying her request for spousal maintenance. We review that decision for abuse of discretion. *Boyle v. Boyle*, 231 Ariz. 63, 65 ¶ 8 (App. 2012).

**¶25**　　　　Wife initially sought spousal maintenance in the event the court declined to award her one-half of the Annuity Payments. After the Arizona Supreme Court remanded for the court to determine whether any part of the Annuity Payments was Husband's sole and separate property, Wife argued she was entitled to spousal maintenance from January 2019 to November 2023, when she began receiving one-half of the Annuity Payments. She stated in the Joint Pretrial Statement, however, that she would waive her spousal maintenance claim if the court found she was entitled to a retroactive award of the Annuity Payments Husband received from January 2019 to November 2023. The court granted Wife a retroactive award of the Annuity Payments and did not award her spousal maintenance. We see no error.

**IV.   Given Our Reversal of the Superior Court's Treatment of the Annuity Payments, We Remand to Allow the Superior Court to Reconsider its Ruling on Wife's Request for Attorneys' Fees.**

**¶26**        The superior court awarded Wife $30,000 of the $99,309.62 in attorneys' fees she requested for the post-remand proceedings, finding that she had been "somewhat unreasonable" in her positions.  Wife challenges the fee award, arguing the court erred by not awarding the full amount of her fees because her positions in the proceedings were not unreasonable. We review an award of attorneys' fees under A.R.S. § 25-324 for abuse of discretion.  *Myrick v. Maloney*, 235 Ariz. 491, 494 ¶ 6 (App. 2014).

**¶27**        Because the superior court's fee award relied in part on its finding that Wife was "somewhat unreasonable" — a finding bound up with its erroneous conclusion that a portion of the Annuity Payments constituted Husband's separate property — we remand for the court to reconsider fees after properly characterizing the Annuity Payments as community property.

## CONCLUSION

**¶28**        For the foregoing reasons, we reverse the court's division of property and remand for a new division of the Annuity Payments, a recalculation of prejudgment interest, and reconsideration of the attorneys' fees ruling.  We affirm the court's denial of spousal maintenance.

**¶29**        In the exercise of our discretion, we deny Wife's request under A.R.S. § 25-324 for an award of attorneys' fees on appeal.

**M O R S E**, Judge, specially concurring:

¶30        For the reasons stated in my special concurrence in *Mayberry v. Stambaugh*, No. 1 CA-CV 23-0289 FC, 2024 WL 1282653 at *1-5, ¶¶ 5-20 (App. 2024) (mem. decision), I'm not convinced that we have the discretion to ignore an implied confession of error when an appellant raises debatable issues and a child's best interests are not at issue. That said, I fully join in the majority's discussion of the merits to demonstrate that Wife raises debatable issues and to provide guidance to the superior court on remand.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR